## THE CONTINENTAL INSURANCE COMPANY OF NEW YORK v. BENJ. R. HILLMER.

1. WITNESS, *to Speak the Whole Truth — Concealment.* The witness swears to speak the truth, the whole truth, and nothing but the truth, touching the matter in question. Upon which it may be observed, that the designed concealment of any truth which relates to the matter in agitation is as much a violation of the oath as to testify a positive falsehood; and this whether the witness be interrogated as to that particular point, or not. (Paley's Moral and Pol. Ph., Book III, ch. 17.)

2. LAWSUIT, *How Not to be Won.* A lawsuit is not a game, to be won or lost by sharp practices and shuffling devices. The object of judicial investigation is to ascertain the facts, not to suppress them.

### *Motion for Rehearing.*

THE facts are stated in *Insurance Co. v. Hillmer*, supra, and in the opinion herein, filed at the session of the court for July, 1889.

*Case & Curtis*, for the motion.
*Jetmore & Son*, contra.

*Per Curiam:* This is an application for a rehearing. It is asserted "that the evidence in the case does not support the opinion heretofore rendered; that there is no evidence to show that Thomas knew a thing about the ten-dollar payment, and surely nothing to indicate that he kept back a thing in the case." The twenty-sixth finding of the trial court commences as follows:

"That on December 2, 1885, the said Thomas, in pursuance of the request of said Hillmer, wrote the said home office a letter, and inclosed therein ten dollars in money, which said letter was duly registered and mailed at Topeka, Kansas," etc.

The affidavit of A. B. Jetmore, filed in support of a motion for a new trial, and not denied or controverted in any respect, states:

"That at the time of the trial he had no knowledge of the

return to the plaintiff of the ten dollars, which he (the plaintiff) and J. Thomas testified to having paid by sending a registered letter to said defendant, to pay the note given to secure the first installment of the premium."

At the trial, after the plaintiff below had introduced his documentary evidence, he called as his first witness W. S. Burgenthal, who, after stating that he was employed as a clerk by Jonathan Thomas, was asked and answered the following questions:

"Q. Look at that instrument: what is it?   A. copy of my letter.

"Q. Sent to whom?   A. R. J. Taylor, superintendent Continental Insurance Company, Chicago, Illinois.

"Q. Did you mail it?   A. Yes, sir.

"Q. Was the postage paid?   A. Yes, sir.

"Q. By registered letter?   A. Yes, sir.

"Q. Look at that.   A. Yes, sir; Mr. Taylor returned receipt.

"Q. You may state what this money was sent for, if you know.   A. It was sent to pay the first installment note of Hillmer's, which was due on the first day of December, 1885.

"Q. At whose request was this money sent?   A. It was sent on account of this notice that was mailed Hillmer that his note was due on that day.

"Q. Were you or Mr. Thomas authorized to send it for him?   A. Yes, sir.

"Q. To meet this payment?   A. Yes, sir.   He brought the notice into our office."

(*Cross-examination.*)

"Q. You say, Mr. Witness, that you sent this through the mail?   A. Yes, sir; I sent it.

"Q. Had Mr. Hillmer ever employed you as his agent, or to do any work for him about this matter?   A. Not any more than he brought that notice in that they sent him, stating that the ten-dollar note was due.

"Q. But you were in the employ of Thomas?   A. Yes, sir.

"Q. The defendant here, or one of the defendants?   A. Yes, sir.

"Q. And for Mr. Thomas, and while in his employ, you sent this?   A. No, sir; I sent that for Mr. Hillmer, and signed his name, per myself.

"Q. Per yourself?   A. Yes, sir.

"Q. You were then in Thomas's employ? A. Yes, sir; I was his clerk, and am his clerk.

"Q. How do you come to say the sender is J. Thomas, if Hillmer ordered you to send it? A. The money was sent by me from his office.

"Q. Is that your handwriting? A. No, sir; that is the postmaster's.

"Q. You sent it in the name of J. Thomas? A. No, sir; I sent it in the name of Hillmer.

"Q. Then the receipt—how about that? A. It came from Mr. Thomas's office, and was sent with the knowledge of Mr. Hillmer.

"Q. Was not the order made out in Thomas's name? A. The order? No, sir. What order do you mean?

"Q. The postal order. A. It was a ten-dollar bill.

"Q. How is it if it purports to be sent by Hillmer it came to have been received from J. Thomas? A. It was sent from J. Thomas's office; we took them over, and they usually did not give us a receipt, but put it right in our box; but the letter shows that I sent it in Hillmer's name.

"Q. But when it came, J. Thomas signed his name to it? A. He did not sign his name to that at all.

"Q. How then did the postmaster get J. Thomas's name there? A. I suppose he looked at it and saw that it was our envelope, which has J. Thomas's name on it.

"Q. You could not tell any other way? A. No, sir.

"Q. Who gave you the money to send? A. We furnished the money.

"Q. Mr. Thomas furnished the money? A. Yes, sir. Mr. Hillmer is bound for it, I presume, yet.

"Q. Is it not true that Thomas was keeping this up for Hillmer? A. It was paid with Hillmer's knowledge.

"Q. You did it for Mr. Thomas? A. No, sir; for Mr. Hillmer, and his name is signed to the letter; it is true that Mr. Thomas furnished the money, but it was done with Mr. Hillmer's knowledge.

"Q. Hillmer was not present when the money was furnished and sent? A. No, sir."

We give a copy of the letter registered and sent, and a copy of the receipt for it:

"DEC. 2-5.—*R. J. Taylor, Supt., Chicago, Ill.*—DEAR SIR: Herewith find ten dollars in currency to pay my note of like

19 — 42 KAS.

amount due Dec. 1–4, on account of insurance policy F520,733. Please cancel note and mail same to me.     Very truly,
     Dec. 3.                                    R. B. HILLMER, per B."

"Registry return receipt, sent Dec. 2, 1885.     Regular number, 119.    From post-office at Topeka, Kansas.    Reg. letter, addressed to R. J. Taylor.    Post-office at Chicago, Illinois. After obtaining receipt below the postmaster will mail this card without cover and without postage, to address on the other side.    Received the above-described registered letter. Sender's name on the other side.    Sign on dotted lines to the right.    When delivery is made to other than addressee, the name of both addressee and recipient must appear.    R. J. Taylor, 32,526.    Varleck.    Erase letter or parcel according to which is sent.    Post-office department.    Official business. Return to (name of sender).    J. Thomas.    Street, or number of post-office box ——.    Post-office at North Topeka, county of Shawnee, State of Kansas."

"Q. Where is that receipt?    A. The receipt from whom?
"Q. The receipt received from the postmaster for the registered letter.    A. I presume among the other receipts over there.    I suppose I could find it; we usually file them.
"Q. And it shows that it was J. Thomas's name, the same as this card?    A. Yes, sir."

The witness Burgenthal distinctly states that this money was sent to pay the first installment note of Hillmer's, due the 1st day of December, 1885.    Thomas furnished the money. Hillmer was not present when the money was furnished and sent.    Whatever Burgenthal, his clerk, did, was by the instruction, for the benefit and with the knowledge of Thomas. The effect produced by this evidence will be found in the twenty-sixth special finding of the trial court, and it reads thus:

"On December 2, 1885, the said Thomas, in pursuance of the request of said Hillmer, wrote the said home office a letter, and inclosed therein ten dollars in money, as requested by said company in its letter of November 18, 1885, which letter was duly registered and mailed at Topeka, Kansas, and which letter was received by said defendant insurance company at its home office in Chicago, Illinois, on the 4th day of December, 1885.    At the time of the sending of said letter of November 18, 1885, to Thomas by said company defendant, and the

sending of said letter by Thomas and the ten dollars therein in money, and its reception at said home office of said insurance company defendant, at Chicago, Illinois, on the 4th day of December, 1885, Kneutson, the duly-authorized adjusting agent of the said company defendant, had full knowledge of the Jarrett mortgage, and the assignment of the policy to Mrs. Jarrett by said Hillmer, and of all incumbrances that were placed on said land and property before the issuance of said policy."

The two controlling facts in this finding are, that the $10 was paid; and at the time of the payment the company, by its duly-authorized agent, had full knowledge of the incumbrances. These findings compelled a judgment against the company. The first finding, to wit, the payment of the ten-dollar premium note, of date December 1, 1885, was procured by the fraudulent suppression of a fact well known to Hillmer and Thomas. This fraudulent suppression is conclusively demonstrated by the evidence in support of the motion for a new trial. Proof of this payment was very important to the plaintiff below. The acceptance by the insurance company of the payment of a premium note after the loss had occurred, with knowledge of the loss and of the assignment by Hillmer to Mrs. Jarrett, would be a controlling fact. The fact that the $10 had been promptly returned was suppressed by Thomas. He had possession of the Hillmer policy. He notified the company of the loss. He conducted the negotiation for its payment with Kneutson, the adjusting agent of the company. He sent the registered package containing the $10. He furnished the money, and did it to protect his interest in the policy. The receipt for the registered package was in his name. When Thomas attempted by his clerk to prove the payment of the $10 premium note, he suppressed the very material fact that the money had been promptly returned. He thus sought a very unfair advantage. The Continental Insurance Company could not anticipate that Thomas would attempt to prove payment of this note. We totally dissent from the view taken of this transaction by the attorneys of the defendants in error. Their contention is not

good in morals or law. It is true that the insurance company "had full, complete and positive knowledge that the note had not been paid," and so did Hillmer, and so did Thomas. Without some previous knowledge of or experience with Thomas, the company had no right to presume that Thomas would claim a payment when in truth and in fact there had been none. The duty of disclosing the fact that the note had not been paid, rested on Hillmer and Thomas; and knowing it had not been paid, they had no legal or moral right to attempt to show that it had been.

1. Witness, to speak the whole truth— concealment.

We submit the following extracts from the brief of counsel of defendant in error, for the motion for a rehearing, as samples of professional ethics:

"What was Burgenthal to do? Was it his duty to walk over to the attorney for the company and whisper in his ear that 'You forgot to ask me about that $10: it was returned by the company'? No; the law does not require any such thing. No court or lawyer ever heard of such a thing until a commissioner of this court saw fit to say that was the law. What was Thomas to do? Was he and Burgenthal bound by law to get up in court and say, 'You fellows have forgotten something: that $10 was returned'? The law makes no such requirements; justice does not demand it; equity would not ask it; and fair play in a *lawsuit* would laugh at it."

All this from a source that seeks to prove payment that they knew never was made. A lawsuit is not a game to be won or lost by sharp practices and shuffling devices; the object of judicial investigation is to ascertain the facts, not to suppress them.

2. Lawsuit, how not to be won.

The case is very much like *Mays v. Strauss*, 8 Abb. N. Cas., 274. This was an action for rent, and the tenant testified that he had paid the rent by a check, but after the trial it was discovered from his bank account that no such check existed. A new trial was granted. The court say:

"The humane and saving principle that a new trial may be granted when a witness has fallen into an error which might have an effect in turning the verdict, as in *Coddington v. Hunt*, 6 Hill, 595, and cases cited by Bronson, J., applies."

The case at bar is stronger than the reported one. We doubt whether the witness in this case "fell into an error."

*Wehrkamp v. Willett,* 1 Daly, 4, was an action by a married woman against the sheriff for taking personal property on an execution against her husband. She claimed the property as her separate estate, and on the trial testified that at the time it was purchased she had money in the Bleeker Street Bank, and had checked money out to pay bills. It was discovered after the trial that she had no money in the bank, and a new trial was granted.

The motion for a rehearing is denied.